```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   :
JOSEPH MCGOWAN,                    :
                                   :
            Petitioner,            :    03 Civ. 5400 (LAP)(HBP)
                                   :
    -against-                      :    OPINION
                                   :    AND ORDER
GARY GREEN, Superintendent,        :
                                   :
            Respondent.            :
                                   :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

By letter dated July 3, 2009, petitioner seeks to stay consideration of his petition for a writ of habeas corpus pending exhaustion of his state remedies with respect to a newly asserted claim.  For the reasons set forth below, the application is denied.

II.  Facts

The facts underlying petitioner's conviction are set forth at length in my Report and Recommendation dated April 30, 2007, familiarity with which is assumed.  I set forth here only those facts material to the resolution of present application.

Petitioner seeks a writ of habeas corpus vacating a sentence and judgment of conviction imposed on May 2, 1997 for nineteen counts of robbery in the first degree and three counts of attempted robbery in the first degree in violation of New York Penal Law Sections 110.00 and 160.15(4). Petitioner was sentenced to nine consecutive indeterminate sentences of twelve and one-half to twenty-five years on the robbery counts, and three consecutive indeterminate sentences of seven and one-half to fifteen years on the attempted robbery counts, for an aggregate sentence of 120 to 140 years. Pursuant to New York Penal Law Sections 70.30(1)(e)(i) and (vi), petitioner's sentence was deemed to be an indeterminate term of imprisonment of twenty-five to fifty years. Petitioner is presently incarcerated pursuant to the judgment.

Petitioner's conviction arises out of his participation in a string of armed robberies and attempted armed robberies of a series of bars, restaurants and parking garages in Manhattan, committed between January 4, 1996 and February 12, 1996. On each occasion, petitioner acted in concert with two to four other individuals. Petitioner's trial on these charges commenced on March 19, 1997 and concluded on May 1, 1997.

Of particular relevance to the present application is petitioner's conviction for his participation in the robbery of a

bar called Pat O'Brien's located at 1497 Third Avenue in Manhattan.  At approximately 3:00 a.m. on February 12, 1996, petitioner entered the bar and asked to use the bathroom (T.[1] 316-18, 389, 392, 465, 469).  After being told that the bar was closed, petitioner displayed a gun and declared that it was a robbery (T. 321, 393, 465).  At the same time, a second armed man and one to three other men entered the bar (T. 321, 392-93, 465).  Petitioner struck Roy Reardon, the bartender, on the face with the gun, and the robbers ordered Reardon and the other employees, Eric Lewenstein and Gerardo Rojas, to empty their pockets and lie on the floor (T. 324-27, 393-95, 467).  The robbers took one to two dollars and a watch from Reardon; fifty dollars and a watch from Lewenstein; and approximately $250 from Rojas (T. 326, 395, 432, 467).  Petitioner ordered Reardon to tell him the combination to the safe and when Reardon claimed not to know it, petitioner placed his gun at the back of Reardon's head, cocked the hammer and threatened to shoot him (T. 328-29, 397-98).  The three victims were then dragged downstairs and petitioner, after finding a downstairs office, threatened to kill the men if he found money inside of it (T. 330-31, 401).  The robbers then forced their victims into a walk-in freezer and barricaded the

---

[1] "T." refers to the transcript of petitioner's trial.

door closed with beer kegs and other supplies before fleeing the scene (T. 331, 401). The prosecution proved petitioner's participation in this robbery through the testimony of Reardon, Lewenstein and Rojas, all of whom testified on the first day of petitioner's trial, March 19, 1996 (T. 267, 312, 386, 463). Prior to and at the trial, the prosecution did not disclose any Brady[2] or Giglio[3] material concerning Lewenstein.

Petitioner filed his petition for a writ of habeas corpus in 2003, asserting six claims: (1) there was insufficient evidence to establish probable cause for his warrantless arrest; (2) identification evidence should have been suppressed because he was deprived of the right to have counsel present during the line-up and the line-up was unduly suggestive; (3) the Trial Court's Sandoval[4] ruling was improper and deprived him of a fair trial, and the prosecutor's questioning exceeded the bounds of the Sandoval ruling; (4) the Trial Court improperly conducted interviews of potential jurors at sidebar, out of petitioner's presence; (5) the prosecutor's summation remarks deprived him of a fair trial, and (6) his sentence is excessive and constitutes

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

[3]Giglio v. United States, 405 U.S. 150 (1972).

[4]People v. Sandoval, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974).

cruel and unusual punishment.  All of these claims were resolved in two reports and recommendations I issued dated April 30, 2007 and January 4, 2010.

The present application arises out of information that first came to petitioner's attention in 2005.  At that time an article appeared in the New York Post disclosing that Lewenstein was being released from a New York State prison after serving a sentence for two counts of attempted rape in the first degree; according to the article, the conduct giving rise to Lewenstein's conviction occurred in 1997 and 2001 (Exhibit F to Petitioner's Notice of Petition Pursuant to CPL § 440.10, annexed to Petitioner's Letter dated June 9, 2009).  Over the next two years, petitioner and a friend developed a substantial amount of information suggesting that Lewenstein may have been a subject in an attempted rape investigation as early as March 1997.

Petitioner has now filed a collateral attack in state court alleging that the prosecution's failure to disclose that Lewenstein was the subject of a criminal investigation at the time that he testified against petitioner violated the prosecution's obligations under Brady and Giglio.  In his current application, he seeks to stay the final resolution of his habeas petition until his state collateral attack is completed so that he can add his Brady/Giglio claim to his pending petition.

III.  <u>Analysis</u>

Petitioner's application is denied because any attempt to assert a <u>Brady</u>/<u>Giglio</u> claim would be both time barred and futile.  Thus, the stay petitioner seeks would serve no purpose.

Where, as here, a claim is based on allegedly newly discovered evidence, a habeas petitioner must assert his claim within one year of the date on which the factual predicate was, or should have been, discovered:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> . . . .
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Petitioner's own submissions establish that he first learned of Lewenstein's criminal conviction in 2005 and that by May 2007 he was aware of such details as the date and location of the offense, the docket number of the indictment that was filed against Lewenstein, the fact that Lewenstein had pleaded guilty,

the date of the sentencing and the identities of the Judge and Assistant District Attorney involved in the matter (Exhibit J to Petitioner's Notice of Petition Pursuant to CPL § 440.10, annexed to Petitioner's Letter dated June 9, 2009). Thus, petitioner was clearly aware of the factual predicate for his claim no later than May 2007. Because petitioner did not make any effort to add this claim to his petition by May 2008, he is now precluded by Section 2244's one-year statute of limitations from attempting to add the claim now.

In addition, there is no possibility that a newly asserted Brady/Giglio claim would relate back to the date the petition was filed. A newly added claim in a habeas corpus petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). Because petitioner's Brady/Giglio claim is not related to the claims petitioner initially asserted and is supported by facts that are entirely unrelated to the facts asserted in the original petition, it does not relate back.

Moreover, even if petitioner's Brady/Giglio claim were timely asserted, it would be futile. As noted above, Lewenstein was only one of three witness who testified to the robbery at Pat

O'Brien's.  Two other employees testified, including Reardon, who testified that petitioner literally held a gun to his head and threatened to kill him.  Given the array of testimony offered against petitioner over the course of the six-week trial, including the testimony of the two other robbery victims at Pat O'Brien's, there is no reasonable basis to conclude that the impeachment of Lewenstein with a collateral criminal matter would have resulted in different verdict.  Because a failure to disclose Brady or Giglio material warrants relief only if the prosecution's failure "'undermines confidence in the outcome of the trial,'" Kyles v. Whitley, 514 U.S. 419, 434 (1995), quoting United States v. Bagley, 473 U.S. 667, 678 (1985), the Brady/Giglio claim suggested by petitioner here would be futile. See May v. Hoke 711 F. Supp. 703, 712 (E.D.N.Y. 1988) ("In short, this court finds that even if any Brady material was withheld with respect to the investigation of Officer Beltrani, any ensuing error was harmless because, in light of overwhelming evidence of guilt, there simply was no 'reasonable probability' that collateral impeachment of Beltrani would have resulted in a different verdict." (Inner quotations and citations omitted)).

      Finally, three remaining matters deserve brief mention. First, although the record is somewhat murky on the issue, it appears that the factual predicate for any Brady/Giglio claim may

8

be entirely lacking.  Although it is not entirely clear, it appears that the earliest criminal conduct giving rise to petitioner's <u>Brady</u>/<u>Giglio</u> claim occurred on March 26, 1997 (Exhibit J to Petitioner's Notice of Petition Pursuant to CPL § 440.10, annexed to Petitioner's Letter dated June 9, 2009).  Since Lewenstein testified on March 19, 1997 -- seven days <u>before</u> what appears to be the date of Lewenstein's earliest criminal conduct -- there may have been no <u>Brady</u>/<u>Giglio</u> violation whatsoever. Second, petitioner's papers also make an oblique reference to a fragment of a statement allegedly made by the prosecutor outside of the courtroom and overheard by an associate of petitioner in which the prosecutor allegedly expressed an intention to move for a mistrial.  It is unclear whether petitioner is seeking a stay on the basis of this "evidence."  If he is, however, there is no basis for the relief sought.  The statement attributed to the prosecutor is so vague that there is no basis to believe it demonstrates the existence of even a colorable constitutional claim.  Petitioner's trial has been reviewed by five justices of the Appellate Division, at least one judge of the New York Court of Appeals and the undersigned; not one judicial officer has found even a hint of error.  Given this record, the vague reference to a statement allegedly made by the prosecutor is simply too insubstantial to provide a basis for any relief.  Finally,

petitioner also makes vague references to Lewenstein's alleged alcoholism and the prosecution's alleged failure to disclose this alleged fact.  Even if Lewenstein is an alcoholic and this fact was not disclosed by the prosecution, there was no Brady/Giglio violation.  Alcoholism is a disease, not a moral deficiency. Alcoholism, without more, is not admissible to impeach, and the prosecution's failure to disclose that a witness suffers from alcoholism is not a Brady/Giglio violation.  People v. Fappiano, 134 Misc. 2d 693, 696-97, 512 N.Y.S.2d 301, 304 (Sup. Ct. Kings Co. 1987) (collecting authorities), aff'd, 139 A.D.2d 524, 526 N.Y.S.2d 620 (2d Dep't), leave to appeal denied, 72 N.Y.2d 918, 529 N.E.2d 182, 532 N.Y.S.2d 852 (1988).

IV.  Conclusion

     Accordingly, because the Brady/Giglio claim underlying petitioner's application for a stay and abeyance would unquestionably be futile, petitioner's application to stay these

proceedings while he exhausts his state remedies concerning this claim is denied.

Dated:  New York, New York
        March 25, 2010

                                        SO ORDERED

                                        _____
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies mailed to:

Mr. Joseph McGowan
DIN 97-A-3515
Southport Correctional Facility
236 Bob Masia Drive
P.O. Box 2000
Pine City, New York  14871-2000

Priscilla Steward, Esq.
Assistant Attorney General
State of New York
120 Broadway
New York, New York  10271